IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02186-SKC-MDB

TYRONE MUHAMMAD,

Plaintiff,

v.

VECTRUS SYSTEMS CORPORATION, and

CHRIS RATHER,

Defendants.

---

ORDER RE: DEFENDANTS' MOTION TO DISMISS (DKT. 49)

---

For nearly two decades, Plaintiff Tyrone Muhammad, an orthodox Muslim, has been an employee of Defendant Vectrus Systems Corporation (Vectrus), a defense contractor. Dkt. 31 at ¶1.[1] Prior to being placed on administrative leave, Plaintiff worked primarily in Kuwait. *Id*. During the COVID-19 pandemic, Vectrus implemented a policy, subject to medical or religious exemptions, strongly encouraging its employees to obtain the COVID-19 vaccine. *Id*. at ¶18.

In September 2021 and again in April 2022, Plaintiff requested an exemption from the policy based on his religious beliefs. *Id*. at ¶100. According to the allegations in the pleadings, following his request, Plaintiff was moved from his office to an

---

[1] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF.

outdoor trailer, his job duties were significantly reduced, and he was subjected to harassment and bullying. *Id.* at ¶¶20-22.

In May 2022, Vectrus informed Plaintiff he was ineligible for an exemption and if he wished to stay in Kuwait, vaccination was required. *Id.* at ¶23. Thereafter, Plaintiff, via counsel, contacted Defendant Chris Rather, Vectrus' Assistant General Counsel regarding Plaintiff's requested exemption. *Id.* at ¶27. After a period of correspondence, Mr. Rather informed Plaintiff his requested exemption had been denied. *Id.* at ¶36. Because Plaintiff did not obtain the vaccine, he was placed on administrative leave and he and his family departed Kuwait on July 1, 2022. *Id.* at ¶44. Since that time, although still technically employed, Plaintiff has not been paid and his benefits were canceled. *Id.* at ¶45. In addition, Vectrus allegedly interfered with Plaintiff's attempts to receive unemployment compensation. *Id.* at ¶47.

During this same period, on or about December 8, 2021, Plaintiff also applied for a promotion. *Id.* at ¶50. Although he interviewed for the position, he was informed in February 2022 that he was not selected. *Id.* at ¶55. Because he was concerned the hiring committee may have discriminated against him, Plaintiff filed an internal complaint with Vectrus' human resources department in August 2022. *Id.* at ¶56. According to Plaintiff, a corporate ethics specialist confirmed Vectrus had not followed its hiring protocols. *Id.* at ¶61. Although Vectrus stated it had taken appropriate actions, it chose not to re-interview Plaintiff or consider him for a similar position. *Id.* at ¶63.

Plaintiff initiated this action on August 26, 2023, asserting Vectrus and Mr. Rather violated Title VII of the Civil Rights Act, the Religious Freedom and Restoration Act, Section 1981 of the Civil Rights Act, and the Age Discrimination in Employment Act. He also asserts two state law claims for wrongful termination. *See* Dkt. 1; Dkt. 31 at ¶¶65-201. Defendants seek dismissal of this case in its entirety based on Plaintiff's purported failure to state a claim. Dkt. 49. The Court has reviewed the Amended Complaint, the Motion and related briefing, and the relevant law. No hearing is necessary. For reasons discussed below, the Motion to Dismiss is granted.

## STANDARD OF REVIEW

When considering whether a complaint states plausible claims for relief under Rule 12(b)(6), the Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong

3

approach to evaluating the sufficiency of a complaint. *Id.* at 678–79. The first prong

requires the court to identify which allegations "are not entitled to the assumption of

truth" because, for example, they state legal conclusions or merely recite the elements

of a claim. *Id.* at 678. The second prong requires the court to assume the truth of the

well-pleaded factual allegations "and then determine whether they plausibly give rise

to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under

Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether

the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*

*v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). But the standard is a liberal

one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that

actual proof of those facts is improbable, and that recovery is very remote and

unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

### A.   Title VII and ADEA Claims

Seven of Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964

(Title VII) (claims 1-4, 8, 10) and the Age Discrimination in Employment Act of 1967

(ADEA) (claim 11). Defendants contend these claims should be dismissed because

Plaintiff did not timely file his required charge of discrimination, and therefore, failed

to exhaust his administrative remedies. Dkt. 49 at pp.5-8. A timely administrative

charge is a prerequisite to initiating both a Title VII and ADEA action in the District

Court. *See* 42 U.S.C. § 2000e–5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA). If the

complainant cannot resolve the dispute informally, they must file a formal charge with the Equal Employment Opportunity Commission (EEOC) within 180 days after the alleged unlawful employment practice occurred. *Id*.

Plaintiff filed his official charge with the EEOC on December 30, 2022. Dkt. 49-1. Consequently, only conduct occurring on or after July 3, 2022, can form the basis of his Title VII and ADEA claims. Here, however, according to the allegations in the Amended Complaint, nearly all the events underlying Plaintiff's claims occurred prior to July 3, 2022. *Id*. To be sure, Plaintiff was not promoted as of February 2022, his religious exemption request was denied in May 2022, he was relieved of his duties on June 30, 2022, and sent state-side on July 1, 2022.

Plaintiff does not dispute this timing but instead contends his EEOC inquiry form that he submitted to the EEOC on December 1, 2022, should be construed as his formal charge of discrimination. He also argues that the continuing violation doctrine preserves his claims despite discrete dates falling outside of the EEOC charge-filing deadline. And he contends his disparate impact claims are timely because he is still employed by Defendant, and therefore, still subject to its policies and practices regarding COVID-19 and unemployment approval procedures. Dkt. 53. Plaintiff also notes he filed an internal complaint with Defendant in August 2022, which he claims constitutes timely conduct.

### 1.      Intake Questionnaire

Plaintiff relies on *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), for the proposition that his EEOC inquiry form constitutes his formal charge of discrimination. In *Holowecki*, the Supreme Court held that a filing other than a formal charge may be deemed a charge if it contains all the information required by statute and regulations and can reasonably be construed as a request for agency action. There, the plaintiff provided the EEOC with an intake questionnaire *and* a signed affidavit detailing the alleged discriminatory practices. *Id*. at 404. In addition, the plaintiff's affidavit specifically asked the EEOC to force Federal Express to end its age discrimination plan. *Id*. at 405. The Supreme Court concluded, under those circumstances, it was consistent with the remedial scheme Congress created to construe the plaintiff's intake form as a charge. *Id*. at 406.

For several reasons, the Court concludes it is not reasonable to construe Plaintiff's inquiry form as a charge of discrimination in this case. As an initial matter, the inquiry form Plaintiff completed does not contain an explicit or implicit request for the EEOC to "activate its machinery and remedial process."[2] *Holowecki*, 552 U.S. at 402. In his Response, Plaintiff argues that when submitting the inquiry form, he checked a box that read, in part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination described [in the form]." Dkt. 53

---

[2] The Court may consider the EEOC Intake Questionnaire Plaintiff completed because it is alleged in the Amended Complaint and is central to one or more of his claims, and its authenticity is not disputed.

at p.6. Plaintiff, however, has not provided the Court with this evidence; but even if the Court accepts this as true, it still does not find this inquiry form to be properly construed as a formal charge of discrimination.

Importantly, this document clearly states it is merely an "inquiry form," and consistently refers to the filer as a "potential charging party," indicating it is not yet a charge. Dkt. 53-1. This is buttressed by the fact that the form also includes a section regarding the "approximate deadline for filing a charge," which Plaintiff indicated as September 27, 2023. And contrary to the requirements for Title VII charges—and unlike the signed and verified affidavit in *Holowecki*—Plaintiff's intake form is neither signed nor verified. 29 C.F.R. § 1601.9. To be sure, Plaintiff signed every page of the formal charge of discrimination he submitted on December 30, 2022.[3] Dkt. 49-1.

Finally, Plaintiff's lawyer apparently prepared the inquiry form and submitted it to the EEOC. As a licensed attorney, he had an obligation to familiarize himself with the laws and rules necessary to provide competent representation. *See* Minn. RPC 1.1 (competence).[4] While *pro se* parties may be entitled to more leniency in their understanding of rules and procedures governing employment actions, the same

---

[3] There is no ambiguity as to the character of this document. Plaintiff submitted it to the EEOC as a Charge of Discrimination Form, and his attorney's accompanying letter explicitly presents it as a Charge of Discrimination for the EEOC's consideration.

[4] According to his entry of appearance, Plaintiff's counsel is based in Minnesota. Dkt. 11.

cannot be said for a licensed attorney. Consequently, the Amended Complaint fails to plausibly allege the inquiry form was a formal charge of discrimination. Instead, Plaintiff's formal charge of discrimination submitted on December 30, 2022, controls, and therefore, any discrete conduct occurring prior to July 3, 2022, is untimely.

### 2.   Continuing Violation

The continuing violation doctrine applies "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (cleaned up). As long as one separate wrongful act occurs within the filing period, a court may consider the entire course of conduct—even those acts falling outside the relevant period. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). The continuing violation theory of discrimination, however, "is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) ((citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

The contours of his argument are not entirely clear, but Plaintiff seems to contend the continuing violation doctrine is applicable to his claims, and therefore, his claims are timely. The Court does not agree. Apart from filing an internal complaint in August 2022—which this Court addresses separately—and the cancellation of Plaintiff's health benefits, all conduct related to Plaintiff's application

for promotion and his request for a religious exemption from the COVID-19 vaccine occurred prior to July 3, 2022. Although Plaintiff contends he is still employed by Defendant, and therefore, continues to feel the effects of their conduct, "[a]n important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Hamer*, 924 F.3d at 1099 (citing *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011)).

With respect to the cancellation of Plaintiff's health insurance, the Court first notes the cancellation is a discrete act to which the continuing violation doctrine would not apply. But in any event, the Court agrees with Defendants that the allegations in the Amended Complaint do not sufficiently tie this act to Plaintiff's request for religious accommodations. Plaintiff alleges he requested a religious accommodation in September 2021, and again in April 2022, and his benefits were cancelled in mid-July 2022. Given the lapse of time between the requests and the alleged adverse action, further allegations are necessary to plausibly allege causation. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." (citations omitted)).

There are no allegations in the Amended Complaint that anyone involved in the benefits-cancellation decision was aware of, or involved with, Plaintiff's request for a religious accommodation. Nor are there any allegations that his request for a religious accommodation was a motivating factor in terminating Plaintiff's benefits. Thus, even assuming the continuing violations doctrine did apply, the Amended Complaint fails to plausibly allege occurrences within the filing period that tether to conduct occurring outside the filing period. The continuing violation doctrine is of no avail.

### 3.   Disparate Impact

Plaintiff's Title VII disparate impact claim contends Vectrus' facially neutral policies regarding COVID-19 vaccinations and unemployment approval process cause a disparate impact on Muslims and Black Americans. Similarly, Plaintiff's ADEA disparate impact claim argues Vectrus' hiring protocols and unemployment dispute policies have a disparate impact on individuals over the age of 40. Setting aside the issue of whether Plaintiff sufficiently exhausted these claims, the Court concludes, even if the claims were exhausted, they are facially insufficient to survive a motion to dismiss.

"A plaintiff purporting to assert a disparate impact claim faces a formidable pleading burden." *Grider v. City and County of Denver*, No. 10-cv-00722-MSK-MJW, 2011 WL 721279, 4 (D. Colo. Feb. 23, 2011). To establish a prima facie case of disparate impact discrimination, a plaintiff must show a specific policy caused a

significant disparate effect on a protected group. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922 (10th Cir. 2012) (quoting *Reinhart v. Lincoln Cty.*, 482 F.3d 1225, 1229 (10th Cir. 2007)). "This is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1299 (2016) (quoting Cinnamon Hills, 685 F.3d at 922); *see also Delmed. Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (plurality opinion) ("To state a prima facie case of disparate impact, plaintiffs must show a statistical disparity demonstrating that some protected group has been adversely impacted by an employment practice.").

Here, however, Plaintiff has pleaded no statistical data or evidence regarding Defendants' allegedly unlawful policies. Plaintiff merely alleges that Defendants' policies cause a disparate impact on "Plaintiff (and any similarly situated religious individual who shares his religious beliefs)" and "on persons over the age of 40." Dkt. 31 at ¶¶192-93, 199. But these allegations are entirely conclusory; they lack specificity and amount to little more than a legal conclusion masquerading as a fact. Without more, Plaintiff's allegations are insufficient to plausibly allege Defendants' policies had a discriminatory effect on Muslims, Black Americans, or people over the age of 40.

Even if statistical data is not required to overcome a motion to dismiss, Plaintiff's allegations still fail to nudge this claim "'across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, (10th Cir. 2008) (quoting *Twombly*, 550 at 570). The only allegations of alleged disparate impact in the Amended Complaint are against Plaintiff himself. "A sample size of one is insufficient to demonstrate a significant disparate impact." *Lawrence v. Bonaventure of Castle Rock*, No. 22-cv-01143-WJM-KLM, 2022 WL 17960556, at *5 (D. Colo. Dec. 27, 2022), *report and recommendation adopted*, No. 22-cv-1143-WJM-KAS, 2023 WL 6976050 (D. Colo. Oct. 23, 2023) (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991)). The Court concludes Plaintiff has failed to state a claim for disparate impact under either statute.

### 4.    Internal Complaint

Plaintiff's allegations in the Amended Complaint, and his arguments in his Response, regarding the role of his August 20, 2022 internal complaint to Vectrus is unclear. On the one hand, he appears to allege and argue that he timely exhausted his administrative remedies on his discrimination claims because he filed an internal complaint with Vectrus in August 2022. Dkt. 53 at p.7. But the filing of an internal complaint has nothing to do with properly exhausting administrative remedies with the EEOC. See 29 C.F.R. § 1601.1 *et seq.*

On the other hand, there is suggestion in the Amended Complaint that Plaintiff alleges Vectrus retaliated against him for making the internal complaint,

and he also appears to argue this internal complaint is relevant to his claim for discriminatory failure to promote. But the Court has already determined the latter is time-barred for Plaintiff's failure to exhaust that claim.[5] And as to the former, the allegations in the Amended Complaint are unspecific or wholly conclusory, and Plaintiff's related arguments are confusing and underdeveloped. Plaintiff is not *pro se,* and therefore, this Court has no obligation to liberally construe his pleadings. Plaintiff is instead represented by counsel. It is not the Court's responsibility to make a party's arguments for them. As the Tenth Circuit has said, an "appellant must present his claims in a way that does not compel us to scavenge through his brief for traces of argument." *United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015) (citing *Nixon v. City and County of Denver*, 784 F.3d 1364, 1370 (10th Cir. 2015). Neither should this Court have to parse the Amended Complaint to determine exactly how Plaintiff states plausible claims in the absence of Plaintiff putting forth a good faith effort to properly bring the plausibility of his claims to the Court's attention. *See Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1127 (D. Colo. 2016) ("Plaintiff's argument in this regard is rather superficial and underdeveloped, which in itself would absolve the court of the obligation to address it substantively."). Thus, given Plaintiff's underdeveloped and unspecific allegations in the Amended Complaint and arguments regarding retaliation as it relates to his internal

---

[5] Moreover, a failure to promote claim is a discrete act to which the continuing violation doctrine does not apply, and therefore, the internal complaint could not somehow salvage that claim. *Davidson*, 337 F.3d at 1184.

complaint, Plaintiff's contentions regarding the internal complaint do not save his Title VII or ADEA claims.

**B.    RFRA**

Plaintiff contends Defendants' refusal to grant him a religious exception from the COVID-19 vaccination requirement violated the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq. "RFRA provides that '[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability,' unless the government 'demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Holt v. Hobbs*, 547 U.S. 352, 357 (2015) (quoting 42 U.S.C. §§ 2000bb–1(a), (b)).

In their Motion, Defendants argue—and there is no dispute—that Vectrus is a private company and Mr. Rather, as its employee, is a private actor. In response, Plaintiff, citing *Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013), argues Defendants are in fact state actors. Dkt. 53 at p.11. But apart from a footnote recitation of the allegation from the Amended Complaint purportedly supporting this contention, Plaintiff offers nothing further in this regard. He provides no analysis on which of the four tests—nexus, public function, joint action, or symbiotic relationship—support his position that Defendants are state actors. He instead leaves it to Defendants and this Court to determine the validity of the argument.

As mentioned above, the Court will not engage with such woefully underdeveloped arguments and grants Defendants request to dismiss this claim, finding the Amended Complaint alleges insufficient facts to plausibly allege Defendants were state actors.[6] *See A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("In addition, the qualified-immunity argument was underdeveloped. It contains mostly general legal statements and empty platitudes."); *Tillmon v. Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to reach qualified immunity where "defendants' analysis of qualified immunity in that motion [to dismiss] was cursory at best.").

## C.    42 U.S.C. §1981

Plaintiff contends Vectrus violated 42 U.S.C. § 1981 when it interfered with his efforts to receive unemployment compensation because he is African American. Dkt. 31 at ¶¶180-86. Defendants argue interfering with unemployment compensation is not an adverse employment action such that it would be actionable under § 1981. Plaintiff did not address this argument in his Response, and therefore, apparently

---

[6] Further, Defendants are correct that contrary to Plaintiff's assertion the government forced, coerced, or partnered with Defendants, the government was enjoined from enforcing any mandatory COVID-19 vaccination policy at the relevant time. *Georgia v. Biden*, 574 F.Supp.3d 1337, 1357 (S.D. Ga. 2021) (enjoining Executive Order 14042 and barring the government from "enforcing the vaccine mandate for federal contractors ... in any state or territory of the United States of America."). And it was clear that government contractors—not the government— were responsible for determining appropriate accommodations. *Davis v. Reliance Test & Tech., LLC*, No. DKC 22-1760, 2023 WL 4532833, at *1 (D. Md. July 13, 2023).

concedes the issue. But even assuming *arguendo* that unemployment compensation could be covered by § 1981, Plaintiff's allegations are nevertheless insufficient.

"Section 1981 'affords a federal remedy against discrimination in private employment on the basis of race.'" *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1180 (10th Cir. 2002) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).

While unlawful discrimination can be inferred from direct or indirect evidence, Plaintiff appears to rely on indirect evidence regarding similarly situated individuals. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Casias v. Raytheon Co.*, No. 17-cv-2635-MSK-SKC, 2019 WL 1170546, at *5 (D. Colo. Mar. 13, 2019) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)). When "determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

Plaintiff alleges Vectrus did not interfere with the unemployment compensation applications of seven other non-African American former employees. But apart from their names, he alleges no further facts or details regarding these former employees, their work histories, or what company policies are relevant to their individual circumstances to plausibly allege they were similarly situated to him. Due to the failure of these allegations, the Court cannot determine whether these individuals are plausible comparators, and Plaintiff has failed to allege a case of discrimination under § 1981. This claim must also be dismissed.

## D.    State Law Claims

Federal courts do not have independent jurisdiction over state law claims unless those claims "turn on some substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Further, when a "district court has dismissed all claims over which it had original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (noting that supplemental jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right").

"[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court

17

involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

In this case, the Court dismisses all the claims based in federal law, leaving only the claims premised on state law. Having considered the foregoing policy considerations, the Court concludes dismissal of the state law claims is warranted.

*     *     *

For the reasons shared above, the Defendants' Motion to Dismiss is GRANTED. Plaintiff's Title VII and ADEA claims are dismissed with prejudice. The remaining claims are dismissed without prejudice.

DATED: March 12, 2024.

BY THE COURT:

S. Kato Crews
United States District Judge